## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 28 2019, 10:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennie Scott
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of Mal.C., Maj.C., M.S., & E.M. (Children) and A.M.C. (Mother);

A.M.C. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

June 28, 2019

Court of Appeals Case No. 18A-JT-3053

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge

Trial Court Cause No.
18C02-1703-JT-13
18C02-1703-JT-14
18C02-1703-JT-15
18C02-1703-JT-16

**May, Judge.**

A.M.C. ("Mother")[1] appeals the involuntary termination of her parental rights to Mal.C., Maj.C., M.S., and E.M. (collectively, "Children"). Mother argues the Department of Child Services ("DCS") did not present sufficient evidence to support the trial court's findings and conclusions that the conditions under which Children were removed from her care would be remedied; that the continuation of the parent-children relationship was detrimental to Children's well-being; that Children had been adjudicated as Children in Need of Services ("CHINS") two times; that termination was in Children's best interests; and that there existed a satisfactory plan for Children following termination. We affirm.

## Facts and Procedural History

Mother gave birth to Maj.C. on December 3, 2015; Mal.C. on October 4, 2013; M.S. on June 5, 2009; and E.M. on April 7, 2006. Shortly after Maj.C.'s birth, DCS received a report that Maj.C. tested positive for drugs at birth. On December 7, 2015, DCS removed Children from Mother's care based on Mother's drug use. Children were placed in foster care, where they remained

---

[1] The parental rights of each of the respective fathers of each child were also terminated, but none of the fathers participate in this appeal.

for the entirety of the proceedings.[2] DCS filed petitions to declare Children as CHINS on December 9, 2015.

[3] On May 16, 2016, Mother admitted Children were CHINS based on her continued drug use. On July 29, 2016, the court issued its dispositional decree, requiring Mother to complete certain services including participating in home-based casework; completing a parenting assessment and following all recommendations; completing a substance abuse assessment and following all recommendations; completing a psychological assessment and following all recommendations; continuing to meet with a psychiatrist; and submitting to random and scheduled drug screens. Mother was also granted supervised visitation with Children.

[4] Mother's visitation with Children was suspended in August 2016 due to her drug use and inappropriate behavior during visitation. Mother has not seen Children since August 2016. On December 5, 2016, the trial court changed Children's permanency plan from reunification to adoption based on Mother's non-compliance with services and continued drug use.

[5] On March 17, 2017, DCS filed petitions to terminate Mother's parental rights to Children. On May 3, May 18, and August 28, 2018, the trial court held fact finding hearings regarding DCS's termination petitions. On November 20,

---

[2] Children could not be placed with their respective fathers for a variety of reasons. In addition, although maternal grandmother requested Children be placed with her, such placement was not permitted based on maternal grandmother's history of DCS substantiated abuse reports.

2018, the trial court entered orders terminating Mother's parental rights to Children.

# Discussion and Decision

[6] We review termination of parental rights with great deference. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[7] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* A trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[8] To terminate a parent-child relationship, the State must allege and prove:

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[9] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98,

102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[10] Mother does not challenge the trial court's findings, and thus we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."). Mother challenges the trial court's conclusions that the conditions under which Children were removed were not likely to be remedied and that continuation of the parent-child relationship posed a threat to Children's well-being.[3] Mother also argues termination is not in Children's best interests and no satisfactory plan existed for Children after termination.

## Reasonable Probability Conditions Would Not Be Remedied

[11] The trial court must judge a parent's fitness to care for her child at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. Children were removed from Mother's care due to Mother's substance abuse.

---

[3] Mother also purports to challenge whether Children had been twice adjudicated as CHINS. However, the trial court did not conclude Children had been twice adjudicated, so Mother's argument to this point is moot.

[12]    Regarding whether there existed a reasonable probability conditions that prompted Children's removal from Mother's care would not be remedied, the trial court evaluated whether there was a reasonable probability that Mother's substance abuse would be remedied.  The court found:[4]

> 24.  From December 2015 to June 2016, [M]other engaged in 27 drug screens, of which 16 were positive for illicit substances and 11 were negative.
>
> 25.  [List of dates of positive drug screens for illegal substances including oxycodone, oxymorphone, methamphetamine, amphetamine, hydrocodone, cocaine, and benzodiazepines.]
>
> 26.  Mother never produced a prescription to DCS for Hydrocodone, Benzodiazepines, Oxycodone or Oxymorphone for her positive screens.
>
> 27.  Mother gave 3 negative drug screens after April 26, 2016.
>
> 28.  Mother only drug screened [sic] 1 time in May 2016.
>
> * * * * *
>
> 31.  Mother completed a substance abuse assessment with Capitol City but did not follow through with the recommendations.

---

[4] The trial court issued four separate orders, one for each child.  The findings relevant to Mother are virtually identical in each order.  Unless otherwise noted, we will use the findings in the order regarding Mal.C.

* * * * *

39.  Mother and Father were ordered to have supervised visitation with child and siblings.  That visitation for Mother and Father never progressed to a hybrid of supervised or unsupervised visitation or fully unsupervised visitation due to Mother and Father's lack of compliance with services and Mother's lack of consistently clean drug screens.

40.  The supervised visitations for Mother were suspended by this Court on August 10, 2016 due to Mother's continued use of methamphetamine or refusal of drug screens.  In addition, Mother was exhibiting behaviors during the visit[s] which were detrimental to the child and siblings.

41.  The Court ordered that Mother's supervised visitation would resume upon Mother providing 30 days of clean drug screens and engagement in substance abuse treatment.

42.  Mother never engaged fully in substance abuse treatment and did not provide 30 consecutive days of clean drug screens in order to have her visitation reinstated.

* * * * *

48.  Mother was referred to Centerstone for Recovery Coach Services on October 4, 2017.  After her intake, Mother had her first session on November 8, 2017.

49.  Mother was resistant to services.

50.  Mother was not motivated to change at the beginning of treatment, but Mother became more compliant.

51. Mother did become more aware of her triggers for substance abuse and relapse during the recovery coach sessions.

52. There were 22 scheduled sessions with Mother and [Recovery Coach] Molly Jones. Mother attended 13 sessions and missed 9 sessions with her Recovery Coach. Only 2 sessions were cancelled due to the illness of Ms. Jones.

53. Mother cancelled or "no-showed" for 7 sessions with Molly Jones.

* * * * *

57. Mother did not successfully complete her recovery coach services, as she was still using illicit substances and had not obtained or maintained stable housing or employment.

* * * * *

59. Mother was referred to Al Adams of Meridian Health Services, who is an addictions counselor and provides individual and group counseling.

60. Mother started the IOT group on August 2, 2016.

61. Mother tested positive on August 16, 2016 for amphetamine.

62. Mother did not attend group therapy sessions from September 8, 2016 to April 18, 2017.

63. Mother began group therapy again on April 18, 2017.

64. Mother completed IOT group on June 14, 2017, and was referred to Relapse Prevention/Aftercare group.

65. Meridian followed up with Mother on July 8, 2017 due to Mother's non-compliance, and no return call was received by [sic] Mother.

66. An outreach letter was sent by Meridian to Mother on July 17, 2017.

67. Mother did not complete the Relapse Prevention/Aftercare program.

68. Mother continued to use illicit substances after completing IOT.

* * * * *

100. Mother was to provide 3 drugs screens per week to DCS.

101. Mother was inconsistent in providing drug screens to DCS.

102. On June 7, 2017, Mother signed a Drug Screen Contract with DCS and agreed to submit to a drug screen every Monday, Wednesday and Friday between 2 - 4 pm.

103. Between June 7, 2017 and April 30, 2018, [M]other should have screened with DCS 141 times.

104. Between June 7, 2017 and April 30, 2018, Mother failed to provide 117 of those drug screens to DCS.

105.  Between June 7, 2017 and April 30, 2018, Mother completed 24 screens.  Said screens were negative; however [M]other should have been screening 3 times per week during that time.

* * * * *

107.  Mother continued to test positive for illicit substances during termination of parental rights proceedings.

108.  Mother provided a drug screen for DCS on the date of the second hearing in the termination proceedings on May 18, 2018. That said screen was positive for methamphetamine.

109.  Mother tested positive for amphetamine and methamphetamine on June 13, 2018.

110.  Mother tested positive for amphetamine on July 27, 2018.

111.  Mother is currently engaged in substance abuse treatment.

(App. Vol. II at 66-71.)  Based on those findings, the trial court concluded, "Although Mother recently appears to have benefitted from some of the services offered by DCS, she has been unable to remedy the conditions over the past 2 ½ years that resulted in the child's removal from her care." (*Id*. at 73.)

[13] Mother argues the trial court did not consider Mother's fitness to care for Children as of the date of the termination hearing when determining if the conditions under which Children were removed from her care would be remedied.  However, as indicated above, the trial court considered her fitness at

the time of termination, but it did not place the same weight on her more recent progress that Mother did. Moreover, while a trial court must consider a parent's ability to care for children at the time of the termination hearing, a court may "disregard the efforts . . . made only shortly before termination and weigh more heavily [a parent's] history of conduct prior to those efforts." *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[14] Mother has a history of substance abuse and has been unsuccessful in treatment. Mother tested positive for illegal substances between two of the termination fact-finding hearings. The evidence before the court supported the court's unchallenged findings, which support the court's conclusion the circumstances would not be remedied.[5] *See i.d.*, 989 N.E.2d at 1234 (mother's recent sobriety outweighed by her history of substance abuse and neglect of her children).

## Best Interests

[15] In determining what is in Children's best interests, a trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*.

---

[5] Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need decide only if the evidence and findings support the trial court's conclusion as to one of these two requirements. *See In re L. S.*, 717 N.E.2d at 209 (because statute written in disjunctive, court needs to find only one requirement to terminate parental rights). Because the trial court's findings supported its conclusion that the conditions under which Children were removed from Mother's care would be not be remedied, we need not consider Mother's argument regarding whether the continuation of the Mother-Children relationship poses a risk to Children's well-being.

A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Children's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[16] Regarding Children's best interests, the trial court found, in addition to those findings quoted *supra*:

> 32. Mother did not complete home based case work while [Family Case Manager] Allen managed the case.
>
> 33. Mother attended 1 group parenting class but she did not complete the parenting classes during the time FCM Allen managed the case.
>
> 34. Mother was engaged in supervised visitation with the child and siblings two (2) times per week.
>
> 35. In early January 2016, Mother was at a visit with child and siblings in Marion. Mother left with all of the children without permission. Mother was not allowed to have any unsupervised time with the children. Mother was stopped by police and the children were recovered unharmed.
>
> * * * * *

40.  The supervised visitations for Mother were suspended by this Court on August 10, 2016 due to Mother's continued use of methamphetamine or refusal of drug screens.  In addition, Mother was exhibiting behaviors during the visit[s] which were detrimental to the child and siblings.

41.  The Court ordered that Mother's supervised visitation would resume upon Mother providing 30 days of clean drug screens in order to have her visitation reinstated.

42.  Mother never engaged fully in substance abuse treatment and did not provide 30 consecutive days of clean drug screens in order to have her visitation reinstated.

43.  Mother's visitation with the child and the siblings has never been reinstated by this Court.

* * * * *

54.  [Recovery Coach] Ms. Jones attempted to work with Mother obtaining stable housing, but Mother did not want to work on housing.

55.  Ms. Jones attempted to work with Mother on obtaining stable employment, but Mother did not want to obtain employment.

56.  During the sessions with Ms. Jones, Mother was not employed and did not have appropriate housing.

* * * * *

58. Ms. Jones opined that Mother would not be able to provide for her children.

\* \* \* \* \*

94. Mother completed a parenting assessment with Capitol City and completed parenting classes.

95. Mother completed a substance abuse assessment in 2016 and participated in IOT but did not complete the recommended Aftercare services.

96. Mother only completed the assessment for the psychological evaluation.

97. Mother did not complete the psychological evaluation as ordered by this Court. That [sic] at least two (2) separate referrals were made for Mother to complete this service.

98. Mother was given gas cards and assistance with transportation to attend services including the psychological evaluation.

99. Mother was referred to home based casework. That [sic] Mother was not compliant with home based casework for the first two (2) or more years after being ordered to do so.

\* \* \* \* \*

112. Mother testified that her husband, [J.C.], is a good father.

113. Mother admitted to domestic violence between herself and [J.C.].

114. Mother no longer has stable housing. She is living with her mother who is the maternal grandmother of the child and siblings. DCS cannot place the child and siblings with the maternal grandmother due to prior DCS substantiations for maternal grandmother.

115. Mother has not been gainfully employed during the pendency of the CHINS case.

116. Mother is currently not employed and does not demonstrate the ability to care for the child or siblings.

\* \* \* \* \*

127. [C.B. and R.B.] are the current foster parents for this child and the siblings. The children have been in their home since February 2016.

128. [C.B.] testified that the children had difficulties after visiting with Mother.

129. After the visitations with Mother were suspended by the Court, the children showed improvement in their behaviors according to foster mother.

130. The child and siblings are participating in therapy.

131. The child has received psychological and genetic testing. The child and 2 of the child's siblings have been diagnosed with Fetal Alcohol Syndrome.

132. The foster parents, [R.B. and C.B.] are aware of the permanency plan of adoption and are willing to give the child a permanent home.

133. The child and siblings have as many as 3-8 appointments in Indianapolis, Marion and Fort Wayne per week. That the foster parents are able and willing to take the child and siblings to all appropriate appointments.

134. Mary Robey is the Court Appointed Special Advocate for this child and siblings.

135. Mary Robey believes that placement of this child and siblings in the home of [R.B and C.B.] is appropriate for the child and siblings.

136. CASA Robey has witnessed that [R.B. and C.B.] interact well with the child and siblings, are able to make sure all of the appointments for medical care are met, and are able to meet all of the needs of the child and siblings at this time.

(App. Vol. II at 68-73.)

[17] Mother argues termination is not in Children's best interests because she is bonded with Children, though Mother does not cite evidence to support that contention. The courts unchallenged findings are sufficient to support the trial court's determination that termination is in Children's best interests. *See In re A.I.*, 825 N.E.2d 798, 811 (Ind. Ct. App. 2005) (termination in child's best interests based on totality of the evidence, including parents' substance abuse and non-compliance with ordered services), *trans. denied*.

## Satisfactory Plan

[18] Pursuant to Indiana Code section 31-35-2-4(b)(2)(D), parental rights cannot be terminated unless DCS provides sufficient evidence of a satisfactory plan for the care and treatment of the child following termination. The trial court found foster parents R.B. and C.B. intend to adopt Children after termination. Mother argues DCS did not provide sufficient detail about the permanency plan for Children, and thus the trial court erred in finding and concluding a satisfactory permanency plan following termination existed for Children.

[19] However, we have long held, the post-termination permanency plan "need not be detailed, so long as it offers general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.*, 804 N.E.2d at 268. Evidence that the plan was for Children to be adopted by foster parents R.B. and C.B. was sufficient to support the trial court's unchallenged finding and conclusion. *See In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008) (adoption is satisfactory plan for child's care and treatment after termination).

# Conclusion

[20] The trial court's unchallenged findings support the trial court's conclusions that the conditions under which Children were removed from Mother's care would not be remedied; that termination was in Children's best interests; and that there existed a satisfactory plan for Children following termination. Accordingly, we affirm the termination of Mother's parental rights to Children.

Affirmed.

Mathias, J., and Brown, J., concur.